**In re Fawzi AL–RUWAISHED and Ellen Rock, Debtors.**

**Dawn S. Baker, Plaintiff,**

v.

**Fawzi Al–Ruwaished and Ellen Rock, Defendants.**

**Bankruptcy No. 00–12615.**
**Adversary No. 01–1013.**

United States Bankruptcy Court, N.D. California.

July 16, 2001.

Elizabeth M. Rowlands, Law Offices of Elizabeth M. Rowlands, Santa Rosa, CA, for Debtor.

Jeffry Locke, San Rafael, CA, trustee.

### Memorandum of Decision

ALAN JAROSLOVSKY, Bankruptcy Judge.

In the spring of 2000, plaintiff Dawn Baker was the on-site sales agent for a residential real estate subdivision. She was also in contract to buy one of the homes. Debtor Fawzi Al–Ruwaished was interested in purchasing one of the homes, but could not afford an outright purchase. Dawn and Fawzi entered into a written "Equity Share Agreement" whereby they would purchase the home at Dawn's favorable purchase price and commission credit. For finance purposes, the property had to be originally deeded to Fawzi and his wife. The parties agreed that as soon as escrow closed Dawn would pay Fawzi $21,900.00, less a credit of $6,580.00, and Fawzi would place Dawn on record title as a 50% owner. Thereafter, Dawn would make payment on a second deed of trust and Fawzi would pay the first. The property was to be sold in three years and the profits shared.

As soon as the sale escrow closed, the relations between Fawzi and Dawn fell apart. Fawzi decided that Dawn had failed to pay him as agreed, so he was free to repudiate the agreement and own the home free and clear of any claim by Dawn, even though he had purchased the property at her special price and with her credits. Dawn took the position that she had always been ready to pay the money as agreed, and that she did not do so only because Fawzi refused to give her a deed. She filed a lawsuit against Fawzi and recorded a *lis pendens*. On November 9, 2000, Fawzi and his wife filed a Chapter 7 petition.

In this adversary proceeding, Dawn seeks a declaration that she has a nondischargeable claim against Fawzi for fraud and breach of fiduciary duty. She seeks a money judgment or a declaration that she is a 50% owner of the property. Fawzi denies any wrongdoing, and alleges that his bankruptcy discharge has erased Dawn's interest in the property.

Dawn did not prove that Fawzi ever intended to defraud her. She correctly argues that the equity share agreement made them partners and created a fiduciary relationship, but has not shown any sort of defalcation. Mere breach of a partnership agreement does not create a nondischargeable debt under § 523(a)(4); there must be misappropriation of partnership property. *In re Niles*, 106 F.3d 1456, 1463 (9th Cir.1997). Since the property has not gone anywhere, nor is there any evidence that Fawzi encumbered it or otherwise alienated it, there has been no defalcation.

Fawzi argues that once this court decides there is no nondischargeable debt it must dismiss the case. However, there is another dischargeability issue: the effect of Fawzi's discharge on the joint venture he and Dawn created to purchase the property. Fawzi is wrong in arguing that his bankruptcy discharge transmuted equitable ownership of the property from the joint venture to him.

Equitable remedies arising out of a debtor-creditor relationship are barred by the bankruptcy discharge in cases where monetary relief is an alternative remedy. However, some sorts of equitable remedies may be imposed outside the debtor-credi-

tor relationship and are not affected by the discharge. *In re Golden Triangle Capital, Inc.,* 171 B.R. 79, 82 (9th Cir. BAP 1994). These may include resulting trusts, partition, and deed reformation. 2 Collier on Bankruptcy (15th Ed. Rev.) ¶ 101.05[5], p. 101–36.1. Where there is a claim that a trust arises out of intended ownership rights in property, the person claiming the ownership rights does not do so as a creditor and is not barred by the discharge.

In this case, Fawzi is acting like he had a contract to sell an interest in his property to Dawn. If that were so, then his obligation to perform might be discharged. However, what actually happened is that Fawzi and Dawn created a joint venture for the purchase and eventual resale of the property. The property is in fact owned by the joint venture. This claim does not arise out of a debtor-creditor relationship and accordingly is not barred by Fawzi's discharge.

For the foregoing reasons, the court will enter judgment as follows:

1. Dawn will take nothing on her claims that Fawzi owes her a debt which is nondischargeable pursuant to § 523(a)(2) or § 523(a)(4) of the Bankruptcy Code.

2. The court will decree that, notwithstanding record title, the real property at 316 Toscana Circle, Cloverdale, California, is in fact owned by the joint venture created by Fawzi and Dawn.

3. Fawzi and his wife shall be ordered to execute a grant deed to a 50% ownership in said property to Dawn, as a tenant in common, in a form acceptable to Dawn, and shall be directed to deposit said deed with their attorney, who shall deliver the deed to Dawn when Dawn has paid to said attorney, in trust, in cash or certified funds, the sum of $14,923.00.[1]

4. Failure of either side to comply with paragraph 3 shall not affect the decree in paragraph 2.

5. Each side shall bear its own attorneys' fees and costs.

6. The obligations created in paragraph 3 shall be enforced by way of contempt proceedings in this court. Any other disputes arising out of the equity share agreement shall be freely enforceable in state court, except that no money judgment may be entered against Fawzi arising out of any act prior to his bankruptcy filing.

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052. Counsel for Dawn shall submit an appropriate form of judgment forthwith.

---

1. This sum constitutes the $21,900.00 Dawn was to pay after the close of escrow, plus 13 monthly payments of $161.00 each on the second deed of trust, less a $6,570.00 credit for closing costs per the agreement, and less $2,500.00 for a bounced check which Fawzi gave to Dawn which the parties agreed could be deducted from Dawn's contribution. If Fawzi has not actually made the payments on the second, Dawn may make the payments directly to the lender. No interest will be added to Dawn's obligations. Either side may seek modification if he or she believes the court's mathematical calculation to be in error.